## DENSMORE *v.* SCOFIELD.

Reissued letters-patent No. 2261, dated May 29, 1866, issued to James Densmore and Amos Densmore for "a new and useful improved oil-tank car for carrying petroleum and other like substances in bulk," are void, — the alleged invention described in the specification being destitute of utility and novelty.

APPEAL from the Circuit Court of the United States for the Northern District of Ohio.

The facts are stated in the opinion of the court.

*Mr. J. C. Clayton* and *Mr. A. Q. Keasbey* for the appellants.
*Mr. George Willey, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

This is an appeal from a decree dismissing the complainant's bill, brought upon a reissued patent issued to James Densmore and Amos Densmore May 29, 1866. The summation and claims, as set forth in the reissue, are as follows: —

"The nature of our invention consists in combining two large, light, tight, firm, stout tanks with an ordinary railway car, making the tank practically a part of the car, so as to carry the desired substance in bulk in the car itself, or in a permanent fixture or part thereof, instead of in barrels, casks, hogsheads, tierces, or other movable vessels or packages, as is now universally done on railway cars, and thereby save carrying the weight of the barrels, casks, hogsheads, tierces, or other movable vessels or packages.

"What we claim as our invention, and desire to secure by letters-patent, are, —

"First, The two tanks B, B (or their equivalent), when constructed and operating in combination with an ordinary railway car, substantially as and for the purposes set forth.

"Second, The two tanks B, B (or their equivalent), when set directly (or nearly so) over the car trucks, and when constructed and operating in combination with an ordinary railway car, substantially as and for the purposes set forth.

"Third, The frames C, C, C, C, the bolts 1, 2, 3, and 4, and the cleats H, H, H, H, when constructed and operating in combination with tanks B, B, the man-holes and manheads D, D, and the faucets E, E, and the runway G, when constructed and arranged in combination with tanks B, B, and an ordinary railway car, substantially as and for the purposes set forth and described."

The bill alleges infringement, and prays for an account of profits and a decree for a perpetual injunction, and for such further relief as may be deemed proper.

Among other defences, the answer denies infringement, and sets up that the reissued patent is too broad, and is, therefore, void.

We pass by these topics, because we deem it proper to dispose of the case upon a more radical and comprehensive objection.

A witness, called by the appellees, testified that he was largely engaged in shipping petroleum, from 1861 to 1872. His language is : —

"In 1863, and prior to this and after, I shipped large quantities of it in old whaling casks holding from one and a half to eight and ten barrels each. I shipped a great many thousands of barrels in said casks, which were sent forward, returned empty, refilled, and forwarded again.

"I attach two leaves of my shipping-book, showing some shipments in casks and return casks in 1863; they are correct.

"My practice was to spike down cleats to prevent the casks from shifting. In nearly every shipment there were small and large casks as above. The casks would go to and fro on the railroad many times, carrying oil, and returning in the same cars empty to be filled and shipped again by me."

Another witness testifies "that he has been general freight agent on the Lake Shore and Southern Michigan Railway and its predecessors for about twenty years. That all this time he has been familiar with the practice and usage in railways as to loading, and that it has always been their practice or usage to place or distribute loads so that they should rest, as far as possible, over the trucks."

A third witness, speaking of wooden tanks like those of the complainants, says:—

"During the year 1871, their use was discontinued, because of the large percentage of leakage, and their consequent liability to be burned up; and, in case of accident on the railroad, if a tank was thrown off a car and it was destroyed, a fire was almost certain to result from the accident. A single iron tank built in boiler shape, and nearly as long as a car, and placed horizontally on the car, was substituted then.

"Q. 'State whether they use that description of tank down to the present time.'

"A. 'That kind of tank car is still in use, and is giving universal satisfaction because of being tight, little or no leakage, and the liabilities to fire are less; and, in case of accident, the tank is of sufficient strength to even be thrown off a car without injury.'

"Q. 'State whether or not tanks of the kind described in the defendants' patent have gone into disuse in the carrying of petroleum generally.'

"A. 'So far as I know, they have.'

"Q. 'In loading freight cars, what has always been the practice and custom in reference to loading over the trucks where the weight can be thus distributed?'

"A. 'It is the universal custom, so far as is possible, to place the weight over the trucks.'"

These witnesses are unimpeached and uncontradicted.

This testimony leaves nothing of the substance of the plaintiffs' alleged invention. No one, we apprehend, would seriously contend for a moment that what is left is sufficient to constitute the basis of a valid patent. *Brown v. Piper*, 91 U. S. 37, and the authorities there cited. But, irrespective of this testimony, and of any testimony, upon looking this reissue in the face, and examining its several claims by their own light, we find nothing that brings any of them within the sphere of what is properly patentable. There is no novelty and no utility. It does not appear (to use the language of appellants' brief) that there was "a flash of thought" by which such a result as to either was reached, or that there was any exercise of the inventive faculty, more or less thoughtful, whereby anything entitled to the protection of a patent was produced. It strikes us that the entirety and all the particulars of the summary and the claims are frivolous, and nothing more.

Patents rightfully issued are property, and are surrounded by the same rights and sanctions which attend all other property. Patentees as a class are public benefactors, and their rights should be protected. But the public has rights also. The rights of both should be upheld and enforced by an equally firm hand, wherever they come under judicial consideration.

*Decree affirmed.*