Littleton, Judge,
delivered the opinion of the court:
The defendant contends that the invention, as defined in plaintiff’s patent, resides in a sequence of steps required for producing substantially invisible fingerprints, footprints, and the like, with a substantially invisible impression-making material, and then chemically developing the invisible impressions, or prints, to render them readable or permanent for record purposes; that none of the claims of the patent specifies or includes in their phraseology, selected to define the patent monopoly, any specific chemical or ingredient, and that the patent is invalid for the reason that each and every *253 claim therein is fully anticipated by prior art patents and publications available to the public more than two years prior to the date of filing of the application upon which plaintiff’s patent issued.
Plaintiff insists that defendant’s construction of the patent is incorrect; that the invention, as defined by the patent, resides in the use of certain materials having certain properties and in the steps employed in the use of such materials for finger printing; that the claims of the patent specify materials having certain specific properties, together with other materials, and the operative relations of these materials are claimed in the patent along with the steps employed in the use of the materials; that the invention is for a patented method in which materials, a sensitizer and a developer, have stated properties and are susceptible of functioning in a stated manner to produce a stated result; that both are disclosed and claimed, but are properly disclosed with more particularity and definition in the specification than in the claims; and that the claims of the patent are broad and generic and are not limited to lead or bismuth in the sensitizer nor to any specific developer, except as limited by its stated qualifications.
We are of the opinion that the defendant’s construction of the plaintiff’s patent is correct and that each of the four claims of the patent, as properly construed, is anticipated in prior patents and publications and that, therefore, the patent is invalid; that even if the claims of the patent are entitled to the construction for which plaintiff contends, and which necessitates reading into the claims certain specific chemical materials, it is nevertheless not entitled to recover on its claim for alleged infringement for the reason that Drum-mond was not the original and first inventor of the impression-making materials.
1. ,The sole purpose of plaintiff’s patent, as we construe it, is to provide a method consisting of a series of steps for producing and recording fingerprints, palmprints, footprints, etc., with a minimum soiling of the parts being printed (Finding 5). The specifications describe two *254 methods by which the purpose of the patent may be accomplished.
The steps for carrying out the first-claimed method consist of producing an invisible impression or print by the use of a substantially colorless or invisible impression-making material, in the order conventionally employed for making fingerprints with a colored ink. The invisible impression is chemically developed for rendering it readable and permanent for record purposes. The preferred method of plaintiff’s patent differs from the conventional method for producing fingerprints with colored ink only in the additional step required for chemically developing the invisible print or impression. The process of producing fingerprints with colored ink comprises (a) preparing a surface with a material adapted to adhere to the part to .be impressed; (b) impressing said part thereon; (c) thereafter impressing said part upon the receiving surface. The preferred method of plaintiff’s patent employs the three steps mentioned for producing invisible fingerprints, footprints, or the like. An additional or fourth step, (d), is required for rendering the invisible prints readable and permanent. This consists of chemically treating the invisible print, thereby transforming it into a substantially permanent and visible record. This process, or series of steps, permits the use of a colorless impression-making material for producing fingerprints, thus leaving nothing on the fingers that might be objectionable or that stains, as is the case when colored ink is used as the impression-making material. The invention, as defined in the claims of plaintiff’s patent, consists, we think, in the process or series of steps above mentioned required for producing substantially invisible fingerprints with a substantially invisible impression-making material and chemically developing the invisible impressions, or prints, to render them readable and permanent. This involves no more than the use of an invisible or sympathetic ink as an impression-making material for producing and recording fingerprints. It thus appears that fingerprints may be produced by the same process, or steps, conventionally used for producing visible fingerprints *255 with a colored ink. In either case a surface is prepared with material adapted to adhere to the part to be impressed, the said part is then impressed upon this surface, and, thereafter, impressed upon receiving surface. When an invisible impression material is used the print produced is substantially invisible, while in the case of the use of colored ink as an impression material the impression is readable and complete.
A surface may be prepared by spreading a thin film of the impression material upon a suitable base or by saturating a pad with such material. In either case a surface has been prepared upon ivhich the part to be printed may be impressed.
Lines 31 to 39, inclusive, of the specification of plaintiff’s patent states that “This [invisible material] may be rolled upon a surface if desired much in the same manner that ink has heretofore been applied to the surface, and after this has been done, the fingers of the person whose impression is to be taken may be placed thereon and may be then placed upon a card or other surface, the impression being transmitted from the fingers to the card.”
Plaintiff uses both the plate and the saturated pad for preparing a surface with an invisible impression-making material for practicing the method claimed by its patent. In the former, a roller is used for obtaining a thin film of the invisible impression-making material upon the plate; and, in the latter, a saturated pad, similar to the well-known ink pad, is used. The pad is saturated with the impression-making material to provide a surface upon which the part to be printed may be impressed. Whether a plate or pad is used, the steps are essentially the same in printing an impression.
The four claims of plaintiff’s patent are similar. Each defines substantially the same process or series of steps, here-inbefore described as steps (a), (b), (c), and (d), for producing invisible fingerprints and then chemically developing the same for rendering the print readable.
The production of an invisible fingerprint by means of an invisible impression-making material inherently requires the *256 procedure of (a), preparing a surface with material adapted to adhere to the part to be impressed; (b), the impressing of said part thereon; and. (c), the placing of said part upon a receiving surface, and, subsequently, the chemical development of the invisible print to render it visible and permanent for record purposes is the final step specified or stated under (d) of claim 2. In these circumstances plaintiff’s patent is anticipated in the prior art and is invalid under the findings, (25), that “The production of invisible fingerprints or footprints by means of an invisible impression-making material, and the subsequent chemical development of the invisible prints to render them visible and permanent for record purposes, was known to those skilled in the art more than two years prior to the filing date of the Drum-mond application which materialized into the patent in suit.”
A number of prior art publications, made a part of the record, each disclose the use of substantially invisible impression-making material placed on the fingers to be printed by a pad saturated with such material, or by other suitable means, and thereafter the development of the invisible print made upon a suitable receiving surface by the use of a suitable chemical for rendering the prints readable and permanent (Finding 14).
The publication entitled “Criminal Investigation” by Dr. Hans Gross, published in 1907, has been deemed sufficient for the purposes of this case (Finding 20).
The record also contains evidence of patents prior to that of plaintiff disclosing invisible or sympathetic printers’ ink suitable for the ordinary impression of letters, pictures, etc. (Finding 14). We have found it necessary to make specific reference in the findings only to the Morse patents, #901723 and #1423246 (Findings 16, 21, 22, and 23); and prior U. S. patents to Hedrick, #1259981 and to Bauder, #1237277 (Findings 17 and 18).
Plaintiff objects to the publications and the patents described in the findings as anticipatory to its patent on the ground that the production of invisible finger and toe prints which have been chemically developed for visibility and *257 permanency, even if known more than two years prior to the filing date of the patent in suit, is of no consequence for the reason that such is not the invention claimed and granted in plaintiff’s patent. It is insisted that the claims of the patent in suit should be construed in accordance with the specification thereof and limited thereby, and that, when so construed, according to the italicized materials hereinafter mentioned, which should be incorporated therein, such claims are (1) a method of taking impressions of the character described consisting in first preparing a surface with a sensitizing material containing oleate of lead, adapted to adhere to the part to be impressed, then impressing said part thereupon, thereafter impressing said part upon a receiving surface, and thereafter treating said surface with a substantially colorless developing material containing a soluble sulphide, to visualize to greater degree the record thereon; (2) a method of taking impressions of the character described consisting in first preparing a surface with a sensitizing material containing oleate of lead, adapted to adhere to the part to be impressed, then impressing said part thereupon, thereafter impressing said part upon a receiving surface, and thereafter treating said receiving surface with a developing material containing a soluble sulphide, to chemically establish to greater degree the impression thereon; (3) a method of taking impressions of the character described consisting in first preparing a surface with a sensitizing material containing oleate of lead, adapted to adhere to the part to be impressed, then impressing said part thereupon, thereafter impressing said part upon a receiving surface, and thereafter chemically treating said receiving surface with a developing material containing a soluble sulphide, thereby chemically changing the material impressed; (4) a method of taking impressions of the character described consisting in first preparing a surface with substantially invisible transferable material containing oleate of lead, adapted to adhere to the part to be impressed, then impressing said part thereupon, then impressing said part upon a receiving surface, thereby transferring said material to and leaving the same upon said receiving *258 surface, and thereafter chemically transforming said material into a substantially permanent and more visual record, by the use of a soluble sulphide.
In support of the foregoing construction of the claims, it is urged that, in determining what the invention of the patent is, a literal reading of the claims is not justified; that the claims are drawn in the conventional simple language, or steps of a method, and are perfectly clear in that respect, but, in order to ascertain how these steps may be applied, as distinguished from what might otherwise be regarded as similar steps in other instances of prior art, the applicable rule of law requires that the specification be read to ascertain what material may be used. We cannot agree. While the claims of a patent may be limited by reference to the specification, they cannot be broadened. The latter, we think, is the necessary effect of plaintiff’s construction.
It is well settled that nothing described in letters patent is secured thereby unless it is secured by a claim. The claims alone express the monopoly. The purpose of a specification is only to enable others to practice the invention. Nothing contained in a specification is a part of the invention in respect of which a monopoly is granted for the period specified in the patent statute. In Altoona Publix Theaters, Inc. v. American Tri-Ergon Corporation and Tri-Ergon Holding, A. G., 294 U. S. 477, the court said: “(The Court of Appeals, hi upholding the patent, made no examination of its separate claims, but treated the patent throughout as though it were a combination of five distinct elements, the photoelectric cell, the arcuate flexing of the film, the flywheel, the flexible connection of the flywheel and the optical slit, although nowhere in the patent is any such combination claimed. The patent thus upheld is one which was neither claimed nor granted. Under the statute it is the claims of the patent which define the invention. See White v. Dunbar, 119 U. S. 47, 51, 52; McClain v. Ortmayer, 141 U. S. 419, 423-425; The Paper Bag Patent Case, 210 U. S. 405, 419; Smith v. Snow, decided January 7, 1935. And each claim must stand or fall, as itself suffi *259 ciently defining invention, independently of the others. See Carlton v. Bokee, 17 Wall. 463, 472; Russell v. Place, 94 U. S. 606, 609; Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 301, 319; Symington Co. v. National Malleable Castings Co., 250 U. S. 383, 385; Smith v. Snow, supra; Walker on Patents, sec. 220, 6th Ed. As none of the flywheel claims as drawn define an invention, none can be aided by reading into it parts of the specifications, or of other claims, which the patentees failed to include in it.”
At the time Drummond filed his application in the United States Patent Office, his patent monopoly was expressed in four method claims, none of which was limited to or included any specific chemical compound. (See Finding 4.) His original specification as filed also contained the statement that “various modifications may be made in the proportions and ingredients used and in the method of practicing the invention without departing from the spirit of the invention as claimed.” (Italics ours.) This statement, which clearly defines to those skilled in the art that the scope of the invention does not contemplate specific ingredients, occurs in lines 80 to 85, page 1, of the patent as issued.
During the prosecution of the application in the Patent Office, Drummond amended his application by inserting claims specifically designating certain chemicals to be employed in his method. (See Finding 4.) The Patent Office rejected these claims and the rejection thereof was acquiesced in by Drummond who subsequently canceled them.
We are now asked by plaintiff to construe the claims of its patent by again reading into them certain specific chemical compounds. This we cannot do. See Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, in which the court states, on page 429, as follows: “But the patentee having once presented his claim in that form, and the Patent Office having rejected it, and he having acquiesced in such rejection, he is, under the repeated decisions of this court, now estopped to claim the benefit of his rejected claim or such a construction of his present claim as would be equivalent thereto. Leggett v. Avery, 101 U. S. 256; Shepard v. Carrigan, 116 U. S. 593; Crawford v. Hey *260 singer, 123 U. S. 589, 606; Union Metallic Cartridge Co. v. United States Cartridge Co., 112 U. S. 624. It is true that these were cases where the original claim was broader than the one allowed, but the principle is the same if the rejected claim be narrower. Why the claim of the present patent was allowed after the rejection of the narrower claim does not appear. The objections made to the claim as originally presented seem to be equally applicable to this.”
Plaintiff cites a number of cases which we think are not in point and, therefore, deem it unnecessary to discuss them, for the reason that none of the cases relied upon supports the proposition that the claims of a patent may be saved by changing them to include a subject matter expressed only in the specification. Accordingly, we have found that the claims of plaintiff’s patent are all directed to a method for taking the impressions specifically referred to in the statement of invention (i. e., footprints, fingerprints, and toeprints), and do not specify or include in their phraseology, selected to define the patent monopoly, any specific chemical or ingredient.
2. Moreover, if the claims of plaintiff’s patent could be so construed as to include specific materials, the suit must fail for the reason that Drummond was not the original or first inventor of such materials (Finding 3). Symington Co. v. National Malleable Castings Co., 250 U. S. 383, 386; George V. Perkins, 1 Fed. (2d) 978. Dr. Brown was not an employee of Drummond. Drummond simply went to Dr. Brown with the idea that he desired to use a lead compound and to develop the same by the use of a sulphide. Dr. Brown, a registered chemist, made various experiments over a period of more than three years and finally originated and developed a preparation or unctuous mass comprising oleate of lead with copaiba balsam which, after an invisible finger print had been made therewith, was to be developed by sodium sulphydrate or a soluble sulphide.
Plaintiff’s argument that the relationship between Drum-mond and Dr. Brown was such as to entitle Drummond to any invention the latter might produce and the-authorities cited do not meet the real issue in the situation as presented.
*261 It may well be stated that even if Drummond had actually employed Brown and paid him to originate and invent certain chemical compounds, any patent monopoly based on such invention, if novel, could only have been established by the filing of a patent application by Brown with an assignment to Drummond, and could obviously not be predicated upon a patent application filed by Drummond in the United States Patent Office, to which he made oath that he was the original, first, and sole irwentor.
The petition must be dismissed, and it is so ordered.
Whaley, Judge; Williams, Judge; GeeeN, Judge; and Booth, Chief Justice, concur.