**:ZONOLITE COMPANY and Insulating Concrete Corporation**

v.

**The UNITED STATES.**

No. 304–54.

United States Court of Claims.
April 3, 1957.

Robert F. Conrad, Washington, D. C., for plaintiffs. Watson, Cole, Grindle & Watson, Washington, D. C., were on the briefs.

Francis H. Fassett, New York City, with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

This is a suit to recover reasonable and entire compensation for alleged patent infringement. Plaintiffs contend that claims 1, 2, 3, 5, 6, and 7 of patent No. 2,355,966 have been infringed by defendant's underground insulated pipe system installed at McGuire Air Force Base, Wrightstown, New Jersey. The Zonolite Company has been the owner of

legal title in and to the patent since its issuance, and Insulating Concrete Corporation is exclusive licensee under the patent for a territory including the location of the accused installation.

The issues now before the court are the validity of the patent and its infringement by the defendant. The extent of liability is to be determined later in the event the court finds that the patent is valid and has been infringed.

Defendant contends that the patent in suit is invalid over the disclosures of a number of domestic and foreign patents and publications having effective dates more than one year prior to the filing date of the application for the patent in suit. The prior art urged upon us by the defendant is listed in finding 15, and discussed in findings 16 through 34.

The patent in suit, No. 2,355,966, hereinafter referred to as the "Goff" patent, was issued in 1944 on an application filed in the Patent Office in 1942. The Goff patent discloses in its specifications an underground insulated pipe system, and includes drawings illustrating embodiments of the invention. The general purpose or use for such systems is to convey heated fluids such as steam and hot water between a boiler plant and buildings to be heated thereby. The Goff patent teaches that an underground heat-insulated pipe system may comprise in combination a structural concrete base and heat-insulating concrete completely and solidly enclosing and supporting the pipe solely on the base. The heat-insulating concrete has a specified density and constitutes a monolithic embedment for the pipe. The Goff patent claims in suit are set forth in full in finding 8. Claim 1 is typical and reads as follows:

"1. In an underground heat-insulated pipe-system including a base and heat-insulated, fluid-conductive, expandible and contractible pipe-means supported by said base and having expansion-and-contraction compensation-means at intervals along the length of the system, the novel combination of improvements of said base being of structural-concrete and said heat-insulation of said pipe-means being heat-insulating concrete completely and solidly enclosing and supporting said pipe-means solely on said concrete-base and constituting a monolithic embedment for said pipe-means from each said compensation-means to the next, said insulating-concrete weighing less than 50 pounds per cubic-foot, said pipe-system being capable of conveying fluid with a heat-differential of at least 150° F. without injury to the system."

The inventions defined in the other claims are similar to that defined in claim 1 but include definition of the density of the heat-insulating concrete, the use of expanded vermiculite as the aggregate in the heat-insulating concrete, and the details of waterproofing the heat-insulating concrete.

It is not disputed that underground insulated pipe systems had been used for many years prior to the invention disclosed in the Goff patent. Prior patents and publications taught the use of cellular concrete insulation in such systems. Cellular concrete, or cell-concrete as it is usually called, is a lightweight concrete made by mixing soapsuds with water and cement. It has high heat-insulating quality due to entrapped air forming dead air cells in the set material but is weak, easily crumbles, and is incable of supporting by itself the weight and movements of large steam pipes. Greater strength can be obtained with cell-concrete by reducing the number of air cells. This, however, causes a concurrent reduction in its heat-insulating quality. Because of this inherent weakness of high insulating quality cell-concrete, underground pipe systems prior to the Goff invention utilized heavy iron rollers spaced along the pipe as a permanent support for the pipes insulated by cell-concrete. The prior systems also utilized a structurally strong encasement of reinforced structural concrete, brick walls or tile to protect the cell-concrete from damage by external forces. Summarizing, the record shows that for many

years prior to the Goff invention, underground pipe systems required the use of numerous heavy rollers spaced along the pipe to permanently support the pipe, and required the use of structurally strong encasements to protect cell-concrete from being damaged.

The record also shows that the heat-insulating properties of vermiculite, the principal substance used in the heat-insulating concrete specified by the Goff patent, were well known prior to the Goff invention. The prior art taught that vermiculite could be used as an ingredient of heat-insulating concrete for floors, walls, acoustical plasters, and the like. The prior art did not teach that such heat-insulating concretes could be used underground to fully support heavy steam mains and that such heat-insulating concretes required no structural protective encasement when so used.

Plaintiffs contend that the Goff invention is an improvement over, and is not anticipated by, the prior art of record herein and assert that the invention produces a new result not obvious to those skilled in the art of underground pipe systems at the time the invention was made. In support of their contentions, plaintiffs point out that the prior art underground insulated pipe systems required four basic elements; namely, a structural concrete base, metal roller or rocker supports for the pipe, heat insulation for the pipes, and structural protection for the heat insulation, while the Goff invention is a duplex system having only two basic elements in combination; namely, a structural concrete base, and a heat-insulating concrete solidly enclosing and supporting the pipes solely on the base and constituting a monolithic embedment for the pipes. The strength of the insulating concrete used in this combination by the Goff system, plaintiffs claim, results in the elimination of the need for structural protection around the insulating concrete as well as the need for roller or rocker supports as permanent support for the pipe means. Plaintiffs also point out that the Goff underground pipe system prevents movement in all directions other than axial,[1] which movement is necessary in any heating system of the type here under consideration.

Defendant, on the other hand, contends that the Goff claims are invalid on the grounds of aggregation, indefiniteness, and anticipation by the prior art, and contends that if the Goff claims are valid the accused installation at McGuire Air Force Base does not infringe.

Even though each of the elements included in the combination recited in the Goff claims was old *per se*, it does not follow that the claims recite an unpatentable aggregation as distinguished from a patentable combination. We need not elaborate on the rule that a novel combination of old elements which cooperate with each other so as to produce a new and useful result or a substantial increase in efficiency is patentable. See Weller Manufacturing Company v. Wen Products, Incorporated, 7 Cir., 1956, 231 F.2d 795. An improvement combination is patentable even though its constituent elements are singly revealed by the prior art, where, as here, it produces a useful result in a cheaper and otherwise more advantageous way. See Jeoffroy Mfg., Inc. v. Graham, 5 Cir., 1955, 219 F.2d 511.

We do not believe that the Goff claims are indefinite. As noted in our findings 9 through 11, the language and meaning of the claims are precise. The claim language is fully supported by the disclosures of the Goff patent specifications and drawings. The claim recitals are unambiguous.

Over the years, courts have applied various tests to determine the presence or lack of patentable invention. The early holding that ingenuity and skill more than that possessed by an ordinary mechanic acquainted with the business

1. Expansion and contraction of the pipes in an axial direction is due to changes in water or steam temperature and is taken care of by conventional expansion loops or joints forming no part of the claimed Goff invention.

are essential elements of every invention, Hotchkiss v. Greenwood, 1850, 11 How. 248, 52 U.S. 248, 267, 13 L.Ed. 683, has been interpreted in various ways. During the intervening century, courts have required inventive genius, Reckendorfer v. Faber, 92 U.S. 347, 357, 23 L.Ed. 719; flash of thought, Densmore v. Scofield, 102 U.S. 375, 378, 26 L.Ed. 214; intuitive genius, Potts v. Creager, 155 U.S. 597, 607, 15 S.Ct. 194, 39 L.Ed. 275; flash of genius, Cuno Engineering Corp. v. Automatic Devices, 314 U.S. 84, 91, 62 S.Ct. 37, 86 L.Ed. 58; unusual and surprising consequences, Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 149, 71 S.Ct. 127, 95 L.Ed. 162, and the like. The Patent Act of 1952, 35 U.S.C. § 100 et seq. (1952 Ed.), 66 Stat. 792, revised and codified the laws relating to patents. Patentability of inventions is now defined in chapter 10 of title 35, and sections 101 and 103 thereof require consideration in this suit. These sections read:

"§ 101. *Inventions patentable*— Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

"§ 103. *Conditions for patentability; non-obvious subject matter*—A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

The validity of the Goff patent here in suit must be determined in light of the cited chapter of the Patent Act of 1952. Briefly, the statutory test for patentability requires that the invention be new and useful and that the subject matter as a whole be not obvious at the time the invention was made to a person having ordinary skill in the particular art. There is little doubt that the construction disclosed by the Goff patent was both new and useful. At oral argument, defense counsel admitted that what Goff did was new. The record shows that the Goff system is now in widespread use and that it has achieved considerable commercial success attesting its usefulness. Notwithstanding any admission on oral argument, we believe that the invention defined in the Goff patent claims was not disclosed in the prior art relied upon by defendant and that it was not obvious to those having ordinary skill in the underground pipe system art at the time the Goff invention was made. None of the several patents and publications cited by defendant discloses or anticipates the invention defined in the Goff patent claims and taught to the art by the issuance of the Goff patent.

In the prior art, the insulating concrete had one job, that of insulation. It did not support *and* insulate as the insulating concrete in the Goff patent does. The prior underground heating art also required a structural protection for the insulating concrete as well as roller or rocker supports, the necessity of which were eliminated by the Goff patent. The new method simplifies the construction of the system because insulation and protection are accomplished in one operation instead of two, this by merely pouring the concrete. This simplicity as well as the elimination of the roller or rocker supports makes the Goff system much more inexpensive than the prior art. The record discloses that in the prior art use of cell-concrete, the movement of the pipes caused by sudden changes in temperature tended to crumble the weak cellular encasement. This movement of the pipes was a problem of the prior art for which remedy was sought. The Goff patent completely eliminated all but axial

movement of the pipes because of the structural strength of the heat-insulating concrete used and thereby solved this problem.

Thus, we believe that the Goff system produced unexpected and surprising results in that it was not previously known that a heat-insulating concrete could safely be used in an underground pipe system without structural encasement for its protection, and without roller or rocker supports for supporting the mains. It was also not previously known that an insulating concrete in such an installation could also provide continuous support for the steam pipes effective in all directions other than axially of the pipe.

 That the novel combination defined in the Goff claims was not obvious to those skilled in the trade is confirmed by testimony to the effect that the Goff system was originally met with skepticism. The trade doubted that a system without structural protection around the insulating material could be feasible. The fact that the feasibility and operability of the Goff system can easily be seen now is of little import. Hindsight cannot support an assertion of obviousness. If the Goff system was obvious it certainly would have been used before the patent was issued because the system presents many advantages over the prior art. At stated in Brown v. Brock, 4 Cir., 1957, 240 F.2d 723, 727:

> " * * * The contention of obviousness is more readily conceived *after* the event than is the solution while the problem remains unsolved. In respect to patents, as in other concerns of life, human experience teaches that 'obviousness' is often much clearer after the event than before; solutions which have remained persistently elusive leap distinctly into view after someone else has pointed them out. * * * "

We hold, therefore, that the invention defined in the Goff patent claims in suit fully meets the requirements of the statute, that the claims define patentable subject matter, and that the claims are valid.

Turning next to the issue of infringement, the accused installation at McGuire Air Force Base is fully described in findings 45 through 49. The McGuire installation included a reinforced structural concrete base provided with layers of felt and hot pitch applied to waterproof the top surface of the base. Precast structural concrete blocks were then set on the waterproofing on the top of the base and spaced at intervals of about ten feet. Metal pipes or mains were then placed on top of the spaced blocks and temporarily supported by said blocks. Forms were then erected on each side of the base and lined with waterproof felt and hot pitch. Next, a slurry of heat-insulating concrete was poured into the forms around the pipes to a depth some six inches above the top of the pipes. The heat-insulating concrete was a mixture of Portland cement, vermiculite, a water-repellent admix and water, and had a density of about 23 pounds per cubic foot when set. After the insulating concrete set, waterproof felts were folded over the top of the insulating concrete and mopped in place with hot pitch. The trench containing the heat-insulating pipe system was then backfilled with sand and earth. In some locations where the underground pipe system was located under a roadway or aircraft runway, structural concrete slabs were installed above the underground system.

Defendant contends that its use of concrete blocks to support the pipes during installation avoided infringement of the claims in suit. Plaintiffs assert that such blocks spaced at intervals along the pipes are temporary supports and that it is immaterial whether the initial support of the pipes while the insulating concrete is poured and sets be concrete blocks as used by the defendant or be suspension wires or chair-like devices as illustrated in the Goff patent drawings.

While the Goff patent specification describes wires for suspending the pipes during embedment in the heat-insulating concrete, and also illustrates chair-like

devices in figure 9 of the patent drawings, the pipe supports used during installation are not a detail of the *claimed* invention. The Goff claims in suit define an installed system rather than a method of installation or the supplemental structures used to aid in making the installation. We believe that the defendant's use of spaced concrete blocks to support the pipe during the installation does not warrant a conclusion that such blocks are the only support for the pipes after the insulating concrete has set and does not provide a sufficient distinction from the Goff patent to avoid infringement.

■ In determining whether an accused installation infringes a valid patent, resort must be had in the first instance to the words of the claims. If the accused matter falls clearly within the claim, infringement is made out and that is the end of it. Graver Tank & Mfg. Co. v. Linde Air Products Co., 1950, 339 U.S. 605, 607, 70 S.Ct. 854, 94 L.Ed. 1097.

■■ Patent specifications and drawings are not to be read so as to limit the scope of the claim recital where the claim recital is clear and unambiguous. While claims should be construed in the light of the specifications and drawings to obtain an understanding thereof, the illustrative embodiments specified are not to be read into the claims. See White v. Dunbar, 1886, 119 U.S. 47, 51–52, 7 S.Ct. 72, 30 L.Ed. 303. The claims alone define what is covered by the patent. See Kuhne Identification Systems, Inc. v. United States, 1936, 82 Ct.Cl. 237, 258.

We note that the contract under which the accused installation was made at McGuire Air Force Base specified that the underground conduit be formed of a mixture consisting of Portland cement, aggregate, admix and water in proportions substantially *identical* with the proportions taught by the specification of the Goff patent. The contract specified that the insulating concrete have a density of approximately 23 pounds per cubic foot. Claim 2 of the Goff patent recites that the insulating concrete weighs approximately 23 pounds per cubic foot. There is no question that the accused installation infringes upon the claims in the Goff patent. However, in those portions of the accused installation where a structural concrete encasement or preformed vermiculite planks were used to enclose the heat-insulating concrete, there was no infringement of the Goff patent invention.

■ We conclude and hold, therefore, that claims 1, 2, 3, 5, 6, and 7 of Goff patent No. 2,355,966 are valid and have been infringed by the accused underground pipe system installed at defendant's McGuire Air Force Base, and judgment will be entered to that effect.

The extent of liability will be determined in further proceedings before the Commissioner.

It is so ordered.

JONES, Chief Judge, and WHITAKER and LITTLETON, Judges, concur.

MADDEN, Judge (dissenting).

I think the Government's structure did not infringe the plaintiff's patent. The essence of the plaintiff's discovery is that cell-concrete, though necessarily weaker than ordinary structural concrete, may, if mixed in the right proportions be light enough to be a good insulating material, but heavy enough to bear the weight of the pipe without being crushed by that weight. The plaintiff's discovery thus makes it possible to eliminate the metal roller or rocker supports for the pipe which were thought to be necessary when the pipes were surrounded by a light substance such as mineral wool or cell-concrete.

The court's opinion says that there was skepticism in the trade as to whether the plaintiff's discovery was practicable, i. e., whether if the cell-concrete was really made light enough to make good insulation, it would bear the weight of the pipes without crushing. If the Government's installation operates satisfactorily for 100 years, it will still prove

nothing as to the practicability of the plaintiff's device. In it, the cell-concrete around the pipes does not bear the weight of the pipes. The pipes are rested on pre-cast structural concrete blocks at intervals of not more than ten feet. The opinion of the court speaks of these blocks as temporary supports. I see nothing temporary about them. They supported the pipe when it had nothing else around it but air; they would continue to support it if it had nothing else around it but mineral wool or saw-dust. When the cell-concrete was poured, the hard concrete blocks were embedded in it and will always be there. If the skeptics should, after all, turn out to be right, and installations resting only on cell-concrete should fail, after years of use, the Government's structure will not fail, because the pipes do not rest on the cell-concrete. They are merely surrounded by it. The most that can be said is that they would rest on it if they did not rest on something else, which they do rest on.

The decision of the court seems to me to say that if there is an old, unpatented method of accomplishing a result, and a new, patented method, one is guilty of infringement if he continues to use the old method when, in the opinion of the patentee and the court, he could have accomplished the result by using the new method. If that is infringement at all it should be designated as *constructive* infringement, infringement not by use of the patented method, but by resort to a legal fiction. I see no good reason for resort to the fiction.