**WATERPROOF INSULATION CORP.**

v.

**INSULATING CONCRETE CORP. and Zonolite Company.**

Civ. No. 9225.

United States District Court
D. Maryland.
July 18, 1957.

Harry Goldman, Jr., Baltimore, Md., for plaintiff.

Read A. McCaffrey and C. Gordon Haines, Baltimore, Md., Watson, Cole, Grindle & Watson, and Robert F. Conrad, Washington, D. C., for defendants.

R. DORSEY WATKINS, District Judge.

Plaintiff, a Maryland corporation, has sued for declaratory judgment that underground insulated pipe systems installed with its insulating concrete (such a concrete being hereinafter referred to as Wicor) do not infringe defendant Zonolite Company's United States Patent No. 2,355,966 to Goff. Defendant Zonolite Company, a Montana corporation, assignee of the Goff patent, and Insulating Concrete Corporation, a Virginia corporation, and exclusive licensee of Zonolite in the areas in question, counterclaimed for a judgment that such systems do infringe the patent. The validity of the patent is not in issue.[1]

The issue of infringement was tried with respect to an underground insulated pipe system installed, with plaintiff's participation, at Richmond, Virginia. The defendants concede that the other Wicor systems within the territory allocated to Insulating Concrete Corporation are not infringements of the Goff patent if the Richmond system is not.

The Goff patent was issued in 1944 on application filed in the Patent Office in 1942. It relates to an underground insulated pipe system composed in part of concrete. Such system is used to convey heated fluid, such as steam or hot water, from a boiler plant to buildings which are to be heated thereby, and is often referred to as a District Heating System. Claim 1, which is the only claim as to which infringement is asserted by defendants, reads as follows:

"1. In an underground heat-insulated pipe-system including a base and heat-insulated, fluid-conductive, expandible and contractible pipe-means supported by said base and having expansion-and-contraction compensation-means at intervals along the length of the system, the novel combination of improvements of said base being of structural-concrete and said heat-insulation of said pipe-means being heat-insulating concrete completely and solidly enclosing and supporting said pipe-means solely on said concrete-base and constituting a monolithic embedment for said pipe-means from each said compensation-means to the next, said insulating-concrete weighing less than 50 pounds per cubic-foot, said pipe-system being capable of conveying fluid with a heat-differential of at least 150° degrees F. without injury to the system."

Although the question of patent validity is not in suit, for a proper understanding of the contentions of the respective parties it is necessary briefly to refer to the use of underground insulated pipe systems prior to the invention disclosed in the Goff patent. Prior patents and publications had taught the use of cellular concrete insulation in such systems. Cellular or cell-concrete is a light weight concrete which may be made by mixing soap suds with water and cement. The resulting dead air entrapped in cells provides a high insulating quality but the material is weak, easily crumbles, and is incapable of supporting by itself the weight and movements of large pipes. Because of the structural weakness of cell-concrete, underground pipe systems prior to the Goff invention utilized heavy rollers spaced along the pipe as a permanent support for the pipes insulated by the cell-concrete. Such prior systems also utilized a structurally strong encasement of reinforced concrete, brick, or tile to protect the cell-concrete from damage by external forces.

It is also clear that the heat insulating properties of vermiculite, the principal aggregate specified by the Goff patent,

1. The Goff patent was held valid and infringed in Zonolite Company v. United States, Ct.Cl.1957, 149 F.Supp. 953.

Unfortunately the findings of fact and conclusions of law are not included in the report in 149 F.Supp.

were well known prior to the Goff invention. It had been used as an ingredient of heat insulating concrete for floors, walls, acoustical plasters and the like. However, the prior art did not teach that such heat insulating concretes, either cell-concrete or vermiculite, could be used underground to sustain the entire support of heavy steam mains, or that such heat insulating concretes required no structural encasement when so used.

Accordingly, the prior art underground insulated pipe systems required four characteristic elements—namely, a supporting base; conventional supports for the pipe, usually pipe rollers or rockers; heat insulation for the pipe; and structural encasement to protect the insulation and thus the pipe. The Goff invention calls for only two basic elements in combination, namely, a structural concrete base and a heat insulating concrete solidly enclosing and supporting the pipes solely on the base and constituting a monolithic embedment for the pipes. 149 F.Supp. at pages 954–55.

Plaintiff's Richmond system comprises a structural concrete base, with Wicor heat insulating concrete poured monolithically around the metal pipe. It employs conventional metal pieces to which the pipe is welded midway between expansion joints; it has occasional metal guides, but primarily the pipe is initially held off the ground and prevented from sagging by the use of insulating bricks or blocks of Wicor around which the concrete is subsequently poured and forms a firm union.

Both Wicor and concrete using the vermiculite aggregate have satisfactory insulation factors and compressive strength.

The aggregate in Wicor is shredded rubber. The insulating concrete used in the Wicor installations weighs 61 pounds per cubic foot.

Plaintiff contends that there is no infringement by it in that (a) Wicor weighs 61 pounds per cubic foot and the critical language of claim 1 of the Goff patent calls for "insulating concrete weighing less than 50 pounds per cubic foot"; and, (b) in the Wicor installations the pipe is not supported solely by the insulating concrete but is supported in part by the welded anchors and occasional metal guides, but primarily by insulating blocks of Wicor.

### I. The 50 pound per cubic foot limitation in the Goff patent.

It is entirely clear that Wicor is not a literal infringement of the Goff patent since the Wicor insulation weighs 61 pounds per cubic foot and the patent Claim 1 calls for insulating concrete weighing less than 50 pounds per cubic foot. In substance, defendants say that the 50 pound per cubic foot limitation is only a convenient way of expressing an insulating value, and that at the time of the patent application, this was the common method of expressing such value. There is no contradiction of defendants' testimony that the 50 pound weight limitation in Claim 1 relates to insulating value of the insulating concrete, and that density was at the time of the patent application the universal and simplest way of referring to insulation value. The evidence further establishes that at the time of filing the patent application, aggregates used in foam or cell-concrete were silicates, and that such concretes with a weight of 50 pounds per cubic foot had a K-factor [2] of approximately 1.4, which was good heat insulating concrete.

This is emphasized by the fact that the 50 pound limitation in the Goff patent was admittedly not inserted by amendment in order to avoid the prior art. Accordingly, there is no problem of file wrapper estoppel. Hunt Tool Co. v. Lawrence, 5 Cir., 1957, 242 F.2d 347; New York Scaffolding Co. v. Whitney, 8 Cir., 1915, 224 F. 452, 462, certiorari denied, 1915, 239 U.S. 640, 36 S.Ct. 161, 60 L.Ed. 482. The Board of Appeals of the Patent Office construed this limitation as a designation of satisfactory heat-insulating concrete, distinguishing it in

---

2. K-factor: The rate of heat transmission through material per unit of thickness and per unit of area.

this respect from the prior art which did not disclose "good heat insulating concrete", and from "conventional concrete, which is not fairly heat insulating."

Since patentee's invention was for an underground *system*,[3] and was not directed to insulating concrete per se,[4] there was no need to restrict the patent to, or specify, a particular weight, except to designate a satisfactory level of insulating value, in terms and manner then customarily used and well understood.

It is true that Goff could have used a K-factor expression in Claim 1, rather than weight, to designate insulation values. However, Goff was stating a minimum satisfactory insulating value, since his preferred embodiment[5] of the invention as described in the specifications is an insulating concrete of 23-pounds per cubic foot, which has a K-factor of about 0.6; and it is conceded that in general, heat insulating value increases with a decrease in density.

Moreover, weight alone, as distinguished from weight as a measure or symbol for insulating value, has never been urged by plaintiff as a consideration of significance prior to this litigation. In the Wicor literature, and negotiations for the Richmond job, plaintiff stressed compressive strength and the insulation value, without mention of weight.

■ Since plaintiff's Richmond system has a stipulated K-factor of 1.23 at 61 pounds per cubic foot, which is lower than the K-factor of 1.4 for defendants' insulating concrete at 50 pounds per cubic foot, and since plaintiff's product embodies the inventive features of the Goff patent of a structural concrete base, and a cement that insulates, supports and protects the pipe, the court holds that plaintiff's installation appropriates the substance of the Goff invention. Hartford Empire Co. v. Swindell Bros., 4 Cir., 1938, 96 F.2d 227, 231; Frick Co. v. Lindsay, 4 Cir.,

1928, 27 F.2d 59, 63; Wine Ry. Appliance Co. v. Baltimore & Ohio R. R., 4 Cir., 1935, 78 F.2d 312, 316. This would be true even if plaintiff's device followed the patent imperfectly, or if it did not function as well as the patented structure, so long as the substance of the invention is appropriated. Matthews v. Allen, 4 Cir., 1950,182 F.2d 824, 827–828.

■ Defendants claim that as plaintiff's Richmond installation accomplishes the same results as the Goff patent in the same way, plaintiff is entitled to invoke the doctrine of equivalents. Graver Tank & Mfg. Co. v. Linde Air Products Co., 1950, 339 U.S. 605, 608, 609, 70 S.Ct. 854, 94 L.Ed. 1097; Specialty Equipment & Machine Corp. v. Zell, 4 Cir., 1952, 193 F.2d 515; Frick v. Lindsay, 4 Cir., 1928, 27 F.2d 59, 62; Crown Cork & Seal Co. v. Aluminum Stopper Co., 4 Cir., 1901, 108 F. 845; Wine Ry. Appliance Co. v. Baltimore & Ohio R. R. Co., 4 Cir., 1935, 78 F.2d 312; Hartford-Empire Co. v. Swindell Bros., 4 Cir., 1938, 96 F.2d 227, 231; Id., 4 Cir., 1938, 99 F.2d 61, 62.

Plaintiff argues that Wicor does not insulate in the same way as the heat insulating concrete of the Goff patent, since the low thermal conductivity of the Wicor aggregate, shredded rubber, is due to the organic molecule of the rubber, whereas the vermiculite aggregate described in the Goff patent insulates primarily through the entrainment of dead air. In a sense this begs the question, since the Goff patent relates to an insulating system, not a particular insulating compound. However, even on the contention urged by plaintiff, the court is convinced, from the lay and expert testimony, that plaintiff's Richmond system is the equivalent of that taught by Goff.

(a) Until June, 1950, plaintiff's president had purchased from defendant Insulating Concrete Corporation materials

---

3. Defendants concede that all of the elements in the combination are old.

4. As is plaintiff's Bell patent 2,623,914, infra, for Wicor.

5. Which is used in substantially all installations licensed by Zonolite. For convenience such composition will hereafter be referred to as Z-Crete.

for the installation under the Goff patent of underground pipe systems for several building projects in which he had an interest. On some of these jobs, plaintiff's treasurer, McKewin, had supervised the installation of the patented system. An employee of McKewin (the employee having been in the tire recapping business) suggested that shredded rubber might be used for pipe insulation. This was immediately recognized as a potential substitute for the vermiculite used in defendants' products, and plaintiff corporation was formed to exploit the idea. Here is found a practical recognition of the equivalence of this aggregate in the field of underground pipe insulation.

(b) The concrete mix developed as a result of plaintiff's experimentation with rubber consists of Portland cement, a very small quantity of "admix", shredded rubber, and water; defendants' preferred embodiment consists of Portland cement, a similar small quantity of admix, vermiculite, and water. Plaintiff obtained a patent for its product, Bell et al. assignors to Waterproof Insulation Corporation, "Construction Materials", 2,623,914, application January 16, 1951, issued December 30, 1952, which covers Wicor. In the Bell patent it is stated that a "filler such as" expanded vermiculite "may be added in the proportion of about 10 to 30%, by volume, of the rubber used", where "less structural strength can be tolerated." The Bell patent does not refer to any lessening of insulating value by such substitution. At least within that range, plaintiff accordingly admits that rubber and expanded vermiculite are equivalents. As the only limitation suggested by Bell relates to structural strength, and as defendants' installations, with 100% vermiculite aggregate are not claimed to be structurally defective,[6] there is a strong argument for literal equivalence.

(c) Plaintiff offered expert testimony to support its contention that the rubber aggregate in Wicor provides the major part of the insulation. In fact, its expert testified that Wicor on setting would have *no* entrained air, adjacent to the rubber particles. He later qualified this to inclusion of not more than 3–6% of air. The court is unable to accept this conclusion, and finds that the weight of the credible evidence supports the conclusion of defendants' expert that there is 0.3 cubic foot of air in a cubic foot of the final Wicor product weighing 61 pounds per cubic foot, and 0.3 cubic foot of air in a cubic foot of Z-Crete, weighing 35 pounds.[7]

6. Approximately $18,000,000 worth of the Goff patented system has been installed; it is described in the Handbook of the National District Heating Association, a professional organization of engineers and utility companies working in the field of District Heating; and Goff's preferred composition was called for in the specifications at McGuire Air Force Base, Wrightstown, New Jersey, involved in Zonolite Company v. United States, Ct.Cl.1957, 149 F.Supp. 953.

7. The explanation is as follows:
The Wicor aggregate of shredded rubber has a bulk density of 33 pounds per cubic foot. Solid rubber has a density of approximately 66 pounds per cubic foot so that the absolute volume of the rubber particles in a cubic foot of Wicor aggregate would be 0.5 cubic foot. The Wicor dry mix contains in addition 25 pounds of Portland cement which is distributed in the spaces between the rubber particles. One cubic foot of this dry mix thus weighs 58 pounds. Several ounces of admix are also present but may be ignored in this connection. To set up the Wicor, water is added to hydrate the Portland cement. Some of this water chemically combines with the Portland cement (referred to as the "water of crystalization") and the remainder evaporates. This water when added also goes into the spaces between the shreds of rubber and the particles of Portland cement. The finished Wicor product therefore weighs 61 pounds (rubber aggregate 33 pounds and hydrated Portland cement 28 pounds), the 33 pounds of rubber aggregate being distributed homogeneously through the cubic foot. The Z-Crete contains one cubic foot of expanded vermiculite aggregate with a bulk density of 7 pounds per cubic foot. This lighter aggregate accounts for the lighter weight of the final product. To this aggregate 25 pounds of Portland cement, and water, are added, producing a final product of 35

Persuasive as are these considerations, there is an even more important, and controlling, one:

(d) The Goff patent is not for an insulating concrete of a particular composition, but for an insulating concrete system for underground pipes. Wicor and the Goff preferred embodiment insulate in the same way. Each positions about the pipe heat-resisting particles in a matrix of heat-resisting, porous, hydrated Portland cement.[8] In each the aggregate, by its own properties and in association with entrapped air, offers resistance to the passage of heat. Each has adequate compressive strength; each supports and protects the pipe.

■ Wicor is the equivalent of the Goff system. Plaintiff urges that as rubber was not, at the time the Goff patent issued, known as an interchangeable ingredient, it cannot be held to be an equivalent. Again, this ignores the fact that the Goff patent, as distinguished from the Bell patent, is for a system, not a "construction material." Moreover, infringement is not avoided by the fact that a patented combination has been improved by the substitution of a new element which in itself may be the basis for a patent. Frick v. Lindsay, 4 Cir., 1928, 27 F.2d 59, 63; Wine Ry. Appliance Co. v. Baltimore & Ohio R. Co., 4 Cir., 1935, 78 F.2d 312, 316; Ackermans v. General Motors Corporation, 4 Cir., 1953, 202 F.2d 642, 646,

certiorari denied 345 U.S. 996, 73 S.Ct. 1139, 97 L.Ed. 1403, rehearing denied 348 U.S. 842, 74 S.Ct. 16, 98 L.Ed. 362; Temco Electric Motor Company v. Apco Manufacturing Co., 1927, 275 U.S. 319, 328, 48 S.Ct. 170, 72 L.Ed. 298; Finkelstein v. S. H. Kress & Co., 2 Cir., 1940, 113 F.2d 431, 433.[9]

## II. Support of the Pipe.

Plaintiff's Richmond installation did not employ pipe rollers or the rocker support of the pre-Goff art. However, the installation (on a structural concrete slab prepared by another subcontractor) called for pipe anchors midway between each expansion joint to which the pipe was welded. It is entirely clear that while of course such anchor does support the pipe at that exact spot, it would not support the pipe for any substantial portion of the 75–100 feet on each side. It is equally clear that the purpose of the anchor is to control the lateral motion of the pipe, and to direct such expansion into the respective expansion joints.

When the pipe was being installed in the dry trench, and before the insulating concrete was poured, it was initially positioned and supported from sagging by Wicor blocks spaced at intervals of approximately 10 feet. When the Wicor insulation is then poured, it completely surrounds and embeds these blocks, with which it bonds, so that while it may subsequently be possible to ascertain,

pounds (7 pounds of vermiculite aggregate and 28 pounds of hydrated Portland cement).

In a cubic foot of the final Wicor product the absolute volume occupied by the aggregate is 0.5 cubic foot and in a cubic foot of Z-Crete is 0.43 cubic foot. In Wicor the absolute volume of the 28 pounds of hydrated Portland cement is 0.2 cubic foot. The remaining 0.3 cubic foot is air. The same figures would apply to 35 pound Z-Crete which also has 28 pounds of hydrated Portland cement. 23 pound Z-Crete (7 pounds of vermiculite and 16 pounds of hydrated Portland cement) would have about 10% more air in the final product.

**8.** The K-factor of hydrated Portland cement is 12.

**9.** The question of the necessity that an equivalent be known at the time of the invention was formerly a matter of doubt and extended discussion. The history of this controversy, and the conclusion that "the question may be held to be settled" that for infringement the equivalent need not have been known at the time of the invention, is set forth in Walker on Patents, 1917, 1929 and 1937 Editions, Sec. 465. Cf. Sinclair & Carroll Co., Inc. v. Interchemical Corporation, 1945, 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644; Pollard v. American Phenolic Corporation, 4 Cir., 1955, 219 F.2d 360, 363; Goldman v. Polan, 4 Cir., 1938, 93 F.2d 797, 799.

at least in part, the outlines of such blocks, they could not be removed even reasonably intact. Plaintiff nevertheless strenuously argues that the use of such blocks avoids infringement. This contention is primarily based upon plaintiff's interpretation of the following language of Claim 1 of the Goff patent:

"* * * and said heat insulation of said pipe-means being heat-insulating concrete completely and solidly enclosing and supporting said pipe-means solely on said concrete base and constituting a monolithic embedment for said pipe means * * *"

Plaintiff asserts that the language of Claim 1 means that "the pipes are supported on the base solely by the monolithic embedment of heat insulating concrete" and that "under the Goff patent, the monolith of insulating concrete is to completely surround the pipes and furnish the sole support for the pipes on the base * * *;" "that is to say the patent envisages the insulating concrete as the *only* element of pipe support on the base." (Plaintiff's emphasis.)

From this plaintiff asserts that in its installations the insulating concrete does not constitute a monolithic embedment for, and is not the sole support of, the pipe, and therefore there is no infringement. To this there are entirely satisfactory answers.

(a) The actual language of the Claim refers to the "heat-insulating concrete completely and solidly enclosing and supporting said pipe means *solely on said concrete base* * * *" (Emphasis supplied.) In its brief before the Board of Appeals of the Patent Office, defend-

ant Zonolite analyzed this portion of the Claim as follows:

"heat insulating concrete

"(1) completely and

"(2) solidly

"(3) enclosing and

"(4) supporting the pipe-means

"(5) solely on the concrete-base * * *"

Grammatically, the support is by means of the heat insulating concrete on the concrete base. This distinguished from the prior art in which the pipe was supported on anchors or rockers, and the insulation was supported (and protected) by reinforced concrete, brick or tile.

It is clear that Wicor supports the pipe on nothing but the concrete base, since that is the only thing on which the Wicor rests.[10]

(b) The pipe anchors are not associated with any question of the insulating means; nor primarily, if at all, with the question of support.

"It is always necessary to anchor the pipe midway between the expansion fittings to control the movement." [caused by linear expansion]. Piping Handbook, 1931 Edition, p. 686; 1939 Edition, p. 800.

(c) The patent drawings disclose the need for, and use of, temporary supports for the pipe before the heat-insulating concrete is poured. One is the suspension of the pipe by means of wires, which can be cut off above the concrete when it has set. Another is the use of steel "chairs" permanently embedded in the structural concrete base. Also, before the Board of Appeals of the Patent Office,

10. Plaintiff claims that in some of its Wicor installations the concrete is poured into an open trench, directly on the soil, no structural concrete or other "base" being employed. As the parties were anxious to secure a prompt ruling on the Richmond-type installation, and as if the Richmond-type installation were held not to be an infringement, a fortiori the other type with no reinforced concrete base would not be an infringement, the parties restricted their evidence to the Richmond-type. This was expressly without prejudice to rights of plaintiff and defendants to offer evidence as to the other type of installation, if the holding herein is adverse to plaintiff.

patentee described the use of insulating blocks as initial support.

(d) The uncontradicted evidence was that the Z-Crete, on a concrete base, was fully able of itself to support the pipe.

(e) In Zonolite Company v. United States, Ct.Cl.1957, 149 F.Supp. 953, the defendant used precast structural concrete blocks (instead of precast insulating concrete blocks as in the Richmond installation), spaced about 10 feet apart, for temporary support. In holding that this variation did not avoid infringement, the Court of Claims said (149 F. Supp. 957–958):

"While the Goff patent specification describes wires for suspending the pipes during embedment in the heat-insulating concrete, and also illustrates chair-like devices in figure 9 of the patent drawings, the pipe supports used during installation are not a detail of the *claimed*[11] invention. The Goff claims in suit define an installed system rather than a method of installation or the supplemental structures used to aid in making the installation. We believe that the defendant's use of spaced concrete blocks to support the pipe during the installation does not warrant a conclusion that such blocks are the only support for the pipes after the insulating concrete has set and does not provide a sufficient distinction from the Goff patent to avoid infringement."

This court also cannot accept the argument that infringement can be avoided if the specific initial support differs from the illustrations of the patent.

(f) Nor is there merit in the claim that the pipe anchors and precast insulating concrete blocks prevent a monolithic embedment for the pipes, and so avoid infringement. Plaintiff's witness testified that the Wicor was "monolithically poured" on the Richmond job. More-

over, precautions were taken to assure that the Wicor blocks bonded[12] to the Wicor poured around them. The blocks and the poured Wicor were of identical composition, and after the poured Wicor set, the blocks could not be removed without the destruction of the system.

The Richmond installation infringes Zonolite's patent No. 2,355,966. An appropriate order may be presented.

---

11. Court of Claims' emphasis.

12. One of plaintiff's witnesses testified that the blocks "were coated with a bonding element * * * That was to make a bond between the block and the new Wicor that was being poured around * * * So it would adhere."