**Louis STRUMSKIS**

v.

**The UNITED STATES.**

**No. 232–68.**

United States Court of Claims.

Feb. 16, 1973.

Louis Strumskis, plaintiff, pro se.

B. Frederick Buchan, Jr., Greensboro, N. C., with whom was Asst. Atty. Gen. Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

OPINION

PER CURIAM:

This case was referred to Trial Commissioner Joseph V. Colaianni with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 134(h). The commissioner has done so in an opinion and report filed on August 30, 1972. Exceptions to the commissioner's opinion, findings of fact and recommended conclusion of law were filed by plaintiff and the case has been submit-

ted to the court on the briefs of the parties and oral argument of plaintiff, *pro se,* and the attorney for defendant. Since the court agrees with the commissioner's opinion, findings of fact * and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Therefore, plaintiff is not entitled to recover and his petition is dismissed.

## OPINION OF COMMISSIONER

COLAIANNI, Commissioner:

This is a patent suit under 28 U.S.C. § 1498. Plaintiff, Louis Strumskis, seeks "reasonable and entire compensation" for unauthorized use by the Government of plaintiff's patented invention. Only the broad issue of liability is before the court; accounting, if any, is deferred to later proceedings. The patent in suit is United States Letters Patent No. 3,155,065 (hereinafter the "Strumskis" patent), issued on November 3, 1964, to Louis Strumskis on an invention entitled "Ship Stabilizer." Plaintiff has continuously been the sole and exclusive owner of all rights, title and interest in said patent.

This litigation, as originally framed, included the usual issues of patent validity and infringement. However, at the trial defendant agreed, for purposes of this proceeding only, to rely solely upon the defense of noninfringement. While the Strumskis patent has five claims, plaintiff only urges that defendant has infringed claim 5.

### Background

The patent in suit relates to a system which is capable of propelling and steering ships while at the same time stabilizing them from pitch and roll. The system, which is fully described in findings 4 and 5, includes a pair of water inlet ducts that extend from each side of the craft and terminate in water discharge ports at the craft's stern. In addition, a Y-shaped duct which spans the entire length of the craft is provided with a pair of inlet ports at the ship's bow and a single outlet port at the ship's stern. Each of the three intake ducts is equipped with separate multi-blade, open-center propeller mechanisms. Vertically mounted blades or fins are arranged relative to the outlet ports of the water intake tubes for steering of the ship. Stabilization is achieved by gyroscope-controlled hydraulic jacks which, in turn, operate individual arrays of fins that are positioned at the intake ends of the side ducts. Each of the tubes may be sealed by a gate mechanism at the inlet ports. Finally, manholes are provided for access to the water ducts.

### The Patent Claim

Claim 5, the only claim which plaintiff alleges has been infringed by the United States, provides:

5. A ship stabilizer of the character described, comprising three water conducting tubes mounted within the hull of a ship, one of the said tubes being Y-shaped at the bow of the said ship and extending from the bow to the stern of the said ship, and each of the two remaining tubes mountd [sic] on each side of the said ship, and each tube having a mechanically controlled water inlet and a water outlet having a plurality of blades therein, the said outlet blades of said two removing tubes being mounted vertically, thereby providing an improved means of steering the said ship, and a propeller of the multi-blade type mounted on bearings and within each one of the said tubes, and a power unit operating each propeller, and the mechanical mechanism of each water inlet embodying a plurality of swingably mounted, horizontally disposed fins in equal vertical-spaced relation to each other, the said fins being mechanically connected to a hydraulic jack automatically operated by a gyrosope [sic], thereby providing automatic stabilization of the said ship, and each said water inlet having a

---

* Omitted from published opinion.

sliding door valve therein, thereby providing a means of preventing water from entering the water conducting tubes while they are being repaired or cleaned out, and a manhole in the upper and forward and rearward ends of each of the three water conducting tubes, the manholes also providing a means of maintenance of the inside of the said water conducting tubes.

## Infringement

The trial record fails to support plaintiff's charge of infringement. Plaintiff has, for reasons which follow, failed to convincingly prove that defendant, during the six years immediately preceding the filing of this action, procured and/or used the invention covered by claim 5 of plaintiff's patent.

Defendant admits, see finding 9, to having procured and/or used six water jet-stream craft of standard commercial design during the relevant six-year period. Both plaintiff and defendant agree, as indicated by finding 10, that none of these six boats, as originally procured, infringed his patent. The parties further agree that repairs made to five of the craft during their Coast Guard service did not change their original configurations in such a way as to amount to infringement of claim 5 of plaintiff's patent. However, plaintiff continues to urge, see finding 13, that certain structural alterations and changes were made to the sole remaining craft, bearing Coast Guard identification CG–180075, such that a new configuration, which does infringe claim 5 of his patent, resulted.

Plaintiff contends that he has adequately demonstrated and proved that defendant has, without his authorization or consent, utilized his patented invention. Plaintiff has attempted to show that defendant has infringed claim 5 of his patent through a number of independent and unrelated theories. Each of plaintiff's theories will be discussed. Plaintiff's charge that defendant has by its actions admitted to having infringed claim 5 of plaintiff's patent will be initially dealt with.

Plaintiff, during trial and in his post-trial submissions, has stressed defendant's failure to execute a so-called March 21, 1969, stipulation of dismissal. Plaintiff's March 21, 1969, offer of dismissal was treated by the trial commissioner as a contingent motion to dismiss under what is now Rule 102(a)(1)(iii) of this court, see finding 14. Moreover, since it was not executed, as the conditions of the offer required, by the Commandant of the U.S. Coast Guard within the 10 days during which plaintiff's offer was to remain open, the motion was denied on April 2, 1969.

Plaintiff contends that an innocent party would have quickly accepted his offer of dismissal. Plaintiff thus reasons that the only explanation for defendant's failure to act is that defendant must have been using an open-center propeller on its water jet craft. Based on the above, plaintiff urges that defendant's failure to accept his offer should be interpreted by this court as an admission of infringement.

Defendant, on the other hand, contends, *inter alia,* that plaintiff's offer was not accepted because it should have been directed to the Department of Justice and not to the Commandant of the U.S. Coast Guard, and also because the offer was unclear and ambiguous. Defendant further contends that its failure to act on plaintiff's offer cannot be taken as an admission of infringement because such charges were formally and categorically denied by its answer to plaintiff's petition. Defendant also argues that plaintiff's offer was unacceptable because it would not have been dispositive of plaintiff's charges of infringement, and thus would have amounted to little more than a useless act.

Particularly, defendant points out that a careful reading of the alleged offer of dismissal, see finding 14(a), shows it to be premised solely on the Coast Guard's use or nonuse of an open-center propel-

626

ler. Defendant correctly points out that the Coast Guard's use or nonuse of an open-center propeller would not be dispositive of the issue involved in this case because claim 5 of plaintiff's patent is directed to a ship stabilizer that calls for a number of other structural elements in addition to an open-center propeller.

■ Accordingly, it is concluded that defendant's explanation is reasonable and justifies its failure to act on plaintiff's offer of dismissal. It is further concluded that defendant's action or nonaction relative to plaintiff's March 21, 1969, motion does not amount to an admission of infringement of claim 5 of plaintiff's patent.

Plaintiff offered no documents nor oral testimony to show that defendant had indeed infringed claim 5 of his patent. Instead, plaintiff, in addition to his contentions that defendant has admitted to infringing his patent, bases his arguments on a number of inferences which appear to be nothing more than extrapolations of alleged unrelated facts. For example, it appears that the grounds for plaintiff's original complaint of infringement took shape after plaintiff was allegedly informed by an unidentified retired Coast Guardsman, see finding 13, of the capability of certain of that service's water jet craft to attain speeds as high as 47 m. p. h. Plaintiff also claims to have established, as a result of a telephone conversation which he had with a Coast Guardsman who was serving on the USS Foxglove, that Coast Guard craft CG–180075 was capable of achieving speeds as high as 47 m. p. h.

Plaintiff argues that a water jet craft would not be capable of reaching such high speeds unless it had been modified in a manner as disclosed by claim 5 of his patent. However, none of the witnesses who appeared at the trial testified that CG–180075, the only water jet craft which plaintiff now charges with infringement of his patent, was capable

of achieving a speed of 47 m. p. h. Furthermore, even if it can be assumed that plaintiff had convincingly shown that one or more of the Coast Guard's water jet craft was capable of reaching a speed of 47 m. p. h., plaintiff's argument would still fall far short of proving his claim of infringement. Plaintiff's arguments fall short of their mark because he has not shown with any degree of certainty that the water jet craft which allegedly reached those high speeds incorporated all of the structural elements of the patented construction defined by claim 5.

Plaintiff next points to a $1,026.33 increase in the value placed on the hull of CG–180075 as evidence of a significant structural modification or alteration having occurred. Plaintiff hypothesizes that the $1,026.33 increase in value would be enough to pay for the building and installation of an open-center propeller on Coast Guard craft CG–180075. Plaintiff, however, offered no documents nor witnesses to support his claims.

Defendant offered no satisfactory explanation for the increase in value of the hull of craft CG–180075. Nonetheless, plaintiff's speculations on what might have occurred are unconvincing for several reasons.

In the first place, defendant produced a number of witnesses who testified that changes such as plaintiff indicates must have occurred to CG–180075 would have required authorization from Coast Guard headquarters. However, a search of areas where such records would be stored failed to turn up any such authorization. They further testified that detailed drawings would have been necessary in order to make the type of structural changes which plaintiff contends occurred to CG–180075, but that a search of areas where such drawings would be kept failed to produce any relevant drawings.

Defendant also points out that the changes, such as plaintiff contends were made to CG–180075, would have been

recorded in the Coast Guard boat records for that craft. A review of the records in evidence fails to indicate that any structural changes such as plaintiff urges occurred.

In sum, as more fully treated in findings 17 through 22, defendant's witnesses testified that a thorough search failed to uncover any records, drawings, or documents which indicate that structural-type changes, such as are called for by claim 5 of plaintiff's patent, were made to CG–180075.

Defendant, however, urges that plaintiff's charge of infringement is untenable for an even more fundamental reason. Specifically, defendant points out that plaintiff appears to be urging that the use by the Coast Guard of an open-center propeller in CG–180075 is enough to establish infringement of claim 5. The following statement from pp. 5–6 of plaintiff's November 1, 1971, reply brief confirms that to be plaintiff's position:

> The center of Defendant's Questions found in page 1 of his Part I rests in the vague belief that each and every structurally claimed "mechanism" and act in a *conglomerate patent* must be found crammed within a singular and accused "mechanism" and act, to infringe.

> To say that the *entire conglomerate* of a patent, rather than that one particular "mechanism" therefrom-and-in-question, must be present in that one accused "mechanism" in order to infringe * * * is an absurdity. But to heed such an absurdity would be legally disastrous to any similar and forthcoming Case, for such an imbalance is contrary to basic law. [Italics in original.]

> \* \* \* \* \* \*
> * * * *The only issue at hand lies in Defendant's usage of Plaintiff's unique open-center propeller mechanism.* [Italic supplied.]

Plaintiff's position, as stated above, is incorrect and does not agree with all known standards and definitions of patent infringement.

This court has consistently maintained that the metes and bounds of an invention are defined by the claims of a patent and not its drawings or specification. Kuhne Identification Systems, Inc. v. United States, 82 Ct.Cl. 237, 258, 28 USPQ 151 (1936); Badowski v. United States, 164 F.Supp. 252, 255, 143 Ct.Cl. 23, 27, 118 USPQ 358, 361 (1958).

Equally long established is the necessity to resort to the language of the patent claims in determining whether or not an accused device infringes a patent. Dvorsky v. United States, 352 F.2d 373, 173 Ct.Cl. 638 (1965), cert. denied, 393 U.S. 983, 89 S.Ct. 456, 21 L.Ed.2d 444 (1968). As explained in *Dvorsky,* patent claims are required by statute, 35 U.S.C. § 112, for the very purpose of forcing a patentee to particularly point out and distinctly claim the subject matter which is regarded to be the invention.

In Autogiro Co. of America v. United States, 384 F.2d 391, 395–396, 181 Ct.Cl. 55, 60, 155 USPQ 697, 701 (1967), rehearing denied, 184 Ct.Cl. 801 (1968), this court clearly stated:

> The claims of the patent provide the concise formal definition of the invention. * * * It is to these wordings that one must look to determine whether there has been infringement.

In this instance, plaintiff's claim 5 comprises all of the elements which the Patent Office considered to be necessary to define plaintiff's ship stabilizer. All the elements which make up the combination defined by claim 5 are considered to be material and necessary. Fay v. Cordesman, 109 U.S. 408, 420, 35 S.

Ct. 236, 27 L.Ed. 979 (1883). Accordingly, the omission of any one of the elements making up the claimed combination avoids all charges of infringement. This last principle was announced by the Supreme Court, at least as early as 1842, in the case of Prouty v. Draper, 41 U.S. (16 Pet.) 336, 10 L.Ed. 985, and has been consistently followed by this court. See Pacific Submarine & Earthquake Proof Wall Co. v. United States, 19 Ct. Cl. 234 (1884); Autogiro Co. of America, *supra,* 384 F.2d at 403, 181 Ct.Cl. at 72.

Turning now to a review of the structural combination covered by claim 5, and comparing it to the accused water jet craft, it is concluded, for reasons more fully set out in findings 17 through 22, that plaintiff's charge of infringement is unsubstantiated and unsupported. Particularly, plaintiff candidly admits that none of the water jet-stream craft as originally procured or allegedly altered or modified ever included a gyroscope. Claim 5 specifically calls for a gyroscope, and for this reason alone plaintiff has failed to sustain his charge of infringement with regard to claim 5. Moreover, plaintiff has not shown that defendant has procured or modified any of the six pertinent water jet craft to include three water conducting tubes in the hulls of the ships, open-center propellers, hydraulic jack operated fins, or many of the other elements called for by claim 5. In sum, plaintiff has not shown that during the six years relevant to this proceeding defendant has procured, modified or used any water jet craft having the structural combination called for by claim 5 of his patent.

It is thus concluded that defendant has not infringed claim 5 of plaintiff's patent. It is felt to be unnecessary to consider the validity of claim 5.

Plaintiff is not entitled to recover and his petition is dismissed.